# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

ELIZABETH ROSE WHITE McDONNELL,

      Plaintiff,                               File No.

v.                                               Hon.

KALAMAZOO COUNTY, and
STEPHANIE MOORE WILLIAMS
and JULIE ROGERS, in their official
and individual capacities,

      Defendants.

_____

# COMPLAINT AND JURY DEMAND
_____

## COMPLAINT

Plaintiff Elizabeth White McDonnell by and through her attorneys,

Pinsky, Smith, Fayette & Kennedy, LLP, states as follows:

### Jurisdiction, Venue, and Parties

1.    This is an action requesting the Court to remedy violations of

Plaintiff's First Amendment rights pursuant to 42 U.S.C.§ 1983,; violations of

Michigan's Whistleblower's Protection Act ("WPA"), Mich. Comp. Laws §

15.361, *et seq.*; the tort of violation of public policy under Michigan law,

violations of the Open Meetings Act (OMA) and a breach of contract claim.

2.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

3.     Plaintiff Elizabeth White McDonnell (Hereinafter, "White") is a resident of Kent County, Michigan, and of the Western District of Michigan, Southern Division.

4.     Defendant Kalamazoo County ("the County") is a local unit of government organized pursuant to the law of the state of Michigan; a state actor; and an employer of Plaintiff under state law.  The County conducts its business throughout Kalamazoo County, which is located in the Western District of Michigan, Southern Division.

5.     Defendant County was and is a public body as set forth in MCL 15.361(d).

6.     Defendant Stephanie Moore Williams (hereinafter "Moore") is upon information and belief, a resident of Kalamazoo County, Michigan. Defendant Moore Williams is an elected official as a County Commissioner and former Board Chair for the Kalamazoo County Commission.  Defendant Moore Williams was at all material times an employer under the Acts and laws set forth below.

7.     Defendant Julie Rogers ("Rogers") is, upon information and belief, a resident of Kalamazoo County, Michigan.  Defendant Rogers is an elected official as a County Commissioner, and current Board Chair for the

Kalamazoo County Commission. Defendant Rogers was at all material times an employer under the acts and laws set forth below.

8.     At all times material to this Complaint, these Defendants acted toward Plaintiff under the color of the statutes, ordinances, customs and usage of the State of Michigan, and County of Kalamazoo.

<u>Factual Allegations</u>

9.     Plaintiff was hired by Defendant Kalamazoo County in February 2018. She entered into an Employment Contract with the County on March 21, 2018. (Attached as Exhibit A). The term of the agreement was for:

> [A] 3 year period commencing on March 19, 2018, and continuing until March 18, 2021, unless terminated by either the Board or the Employee, with or without Cause, pursuant to the termination provisions of this Agreement. Each party will provide at least 60 calendar days prior written notice to the other party . . .

10.     Immediately before arriving at her new offices, she had been made aware that dysfunction existed on the County Board, yet was not allowed to meet the corporate counsel staff or board members before arriving. She was told that her mission was "to help the majority of the Board move business forward."

11.     Within her first few weeks, it became clear that the County Board meetings were chaotic, disorganized and were not conducted within the requirements of the Open Meetings Act. While there was a purported

agenda for the meetings, any subject might come up, be discussed, and a motion made for the subject to be voted on.

12.    As a result, White recommended that several changes needed to be made to the bylaws to limit the chaos and to help the board stick to the written agenda.  These new bylaws were adopted in August of 2018 and did help to keep the chaos down in the following months.

13.    In April of 2018, the Vice Chair of the Board (DS) brought to her a 990 form for a nonprofit "Mothers of Hope" filed November 28, 2017, which showed that the Board Chair Moore was paid $34,326 by the nonprofit organization as a "consultant"; Moore's mother, Gwin Lanie, is the president of Mothers of Hope.  DS was very concerned that something improper was going on as the County does business with that organization, that there was corruption involved, and urged Plaintiff White to look into it.

14.    On August 31 of 2018, Plaintiff received a call from another County Board Commissioner (SM), who reported numerous improprieties on the part of the County Treasurer, involving among other things, properties acquired by the County Treasurer in tax foreclosure, which were then given away to third parties.  It was later discovered by Plaintiff White that one such property was transferred to Mothers of Hope after receiving more than $38,000 in improvements at public expense.

15.     Plaintiff White met with the County Treasurer to obtain information about the matter and to get the Treasurer's explanation of the situation.

16.     Plaintiff White, the following week, informed Prosecutor Jeff Getting of the reports and was told that a meeting would be set up with Michigan State Police Detective Lieutenant Chuck Christensen.  Plaintiff met soon after with Christensen at Getting's office.  White was told by the State Police to help bring information to them and where to focus her information gathering.

17.     Plaintiff White emailed the Board of Commissioners regarding the report and the investigation on September 10.  Plaintiff White reported information about this investigation that involved the County Treasurer and then-Board Chair Moore.  One of the Commissioners (MQ) sent the email to the media, which then published the email.

18.     On Wednesday, September 12, the County Treasurer was in the County Administrator's office and stated loudly, "I'm coming after you (pointing to the County Administrator) and her (pointing to White's office door)."

19.     On September 18, Chair Stephanie Moore without warning and during a budget discussion stated that she wanted to review White's performance during the open meeting.  She stated, "I don't know what

[White] does all day," and accused her of racism and sexism.  Defendant Moore refused to allow White to respond at the meeting, and then accused her of breaching attorney client privilege by leaking her own 9/10/18 email to the media.  This accusation was knowingly false as Moore had previously received information that it was not White who had given the email to the press, but another Commissioner.

20.    Defendant Moore continued during public meetings to disparage Plaintiff White for the rest of 2018.

21.    In January of 2019, new Board Chair Defendant Julie Rogers and new Commissioner Meredith Place immediately drafted a new bylaw amendment, without any input from Counsel, which removed the safeguards that Ms. White had put in place.

22.    Also, in January of 2019, a consultant was hired by the County to do a Diversity and Inclusion study of the Commission and County staff.

23.    Early in 2019, Defendant Moore sent a FOIA request to Plaintiff White's former employer, the City of Grand Rapids, after she had declared, falsely, that Plaintiff White was "fired" from her last job.  Plaintiff White worked at the City of Grand Rapids for over 15 years, had a spotless record, served under three different mayors, three different City Attorneys and scores of Board Commissioners and Department heads.  She left under a restructuring of the Department.

24.     The investigation into the County Treasurer's potentially illegal and/or unethical activities continued through the Spring and Summer of 2019.  The scope of the investigation went far beyond the issues Ms. White brought to the Prosecutor.

25.     During that timeframe, in a public meeting on August 27, 2019, Defendant Stephanie Moore openly asked Board candidates being interviewed whether they could make hard decisions if they were on the board, and gave as an example, "Are you ready to fire the Corporate Counsel and the Administrator?" referring to Plaintiff White.  This was done repeatedly, with each candidate interviewed.

26.     In February of 2019, Defendant Rogers began to criticize and micromanage Plaintiff White's legal work, though she did not have a legal background.  She began to set unrealistic timelines for Ms. White to review contracts and resolutions requiring close scrutiny, accused her of not getting work done that she had in fact performed, and began lecturing her on board procedure, though the Commission rarely followed procedure or the OMA.

27.     In March of 2019, Plaintiff White's performance evaluation was conducted at the direction of Chair Rogers.  The performance evaluation was not only unfair and inaccurately portrayed the good work of Ms. White, but also contained disparaging and untrue remarks from one or two of the reviewers.  Plaintiff White was ultimately able to request a closed session

discussion under the Open Meetings Act.  According to her contract, she was given a raise.

28.     Defendant Rogers reached out to several elected officials to review White – a process that had never been done before in evaluating County employees.  The evaluations that were returned to Rogers from Sheriff Fuller and Prosecutor Getting were favorable, but were not included in the evaluation, and were not put in White's personnel folder.

29.     In June of 2019, Plaintiff White was interviewed by the Michigan State Police regarding the reports regarding the Treasurer, Mothers of Hope, and Commissioner Moore.  Commissioner Moore throughout 2019 repeatedly demanded to know how much time was spent on the investigation, coming down harder on Plaintiff White and Administrative staff as the year progressed.  Moore and others insisted that White and others account for every hour they spent on answering questions in the course of the investigation and providing information to the police, though it was not within their control.

30.     In July of 2019, the results of the workplace study of the County by the hired Consultant were released. According to the consultant, diversity and inclusion issues couldn't even be addressed based on the circumstances.  The consultant issued a scathing report which deemed the Board to "exhibit a lack of understanding of their role as public servants."; that they

demonstrated a "lack of trust in administration and upper management" and had an "extreme lack of respect toward each other, toward Administrators, and county employees in general." The report further stated that, "the terms 'toxic' and 'dysfunction' were used to describe the Board of Commissioners by multiple people, several times."

31.     This was no surprise to Ms. White as she had been publicly and relentlessly abused at public meetings by certain Board members.  Over the course of her tenure with the County, the abusive treatment was so noticeable that members of the public as well as County employees regularly approached Ms. White to address the attacks on her.

32.     At the October 1 Committee of the Whole (COW) meeting, after a motion was made that was improperly introduced by Ms. Place, Ms. White raised her hand and was recognized by the Chair Place to speak.  Ms. White explained that one could not make a motion and have a non-agenda item introduced and adopted in the same meeting, per the COW bylaws.  Ms. Place got upset and sternly commented that Ms. White was being "insulting" and "demeaning" to her, chastising Plaintiff White for doing her job.

33.     At a meeting with Defendant Rogers and Vice Chair Tracy Hall, Plaintiff White asked why she was getting so much push back from the Commissioners and wanted to know why regular business could not be accomplished.  Ms. Rogers told Plaintiff White that she better think about

leaving the County because several members of the Commission wanted to vote her out. She told Ms. White that the Commissioners would "drag [her] through the mud" and "ruin [her] reputation" if she didn't resign.

34.    At the next regular meeting on October 15, there was a two-hour closed session meeting presumably, in part, regarding Ms. White's employment. White was not given the opportunity to attend this meeting, which was unusual, nor was she given the option to have it held in open or closed session.

35.    After the Commission members came back into open session, a Commissioner made a motion to award a $90 million dollar contract bid for a huge County construction project that was not on the agenda.  Quickly, and without any discussion whatsoever, the board adopted it on the spot.  There was no opportunity for Ms. White to speak up at the time of the motion, and no indication that the subject was going to be brought up at all.

36.    Though Plaintiff White was under fire by certain Board members and was publicly chastised for bringing up procedural violations during meetings, she sent a memorandum to labor counsel reporting and documenting what occurred as to the construction bid

37.    On or about October 18, 2019 a FOIA request was received by the County from the Miller Law Firm for all communications among and between County Commissioners and staff regarding the award of the $90-million-

dollar construction contract.  As the County's designated FOIA Coordinator, Plaintiff White was then tasked with the process of gathering text messages, voicemails, and other communications from members of the Commission regarding the recent contract award.

38.     On October 30 via electronic mail, a FOIA request came to the County from MLive requesting Plaintiff White's personnel file and specifically any evaluation.  Upon information and belief, certain Board Commissioners reached out to MLive and suggested that the reporters ask for this.

39.     Plaintiff White was put on administrative leave to begin October 31, 2019.

40.     On Wednesday November 6, without the subject being on the agenda, a closed session was held presumably regarding the termination of Plaintiff White from her position.  Plaintiff was given no notice whatsoever of the meeting about her employment status and was not asked if she wanted the meeting to be open or closed. When the Commissioners came out into open session, there was no discussion, no deliberation, and it was announced that Plaintiff White was terminated pursuant to 4(a) of her Employment Contract unless she resigned by Friday November 8, by 5:00 pm.

41.     Defendant Rogers and Defendant Moore made statements to the media regarding the termination after the meeting.  That evening, Defendant

Moore posted the MLive article about White's termination on her personal Facebook page, from her personal Facebook page to her Commissioner Facebook Page, then posted again on her Commissioner Facebook page. All of these posting were "public". Moore also posted the article on her LinkedIn page.

42.    Plaintiff White chose not to resign her employment.

43.    Contract provision 4a. states:

**Termination and Severance**.

> **A.**  The employee's employment Agreement may be terminated without cause by a majority vote of the total number of the County's Board members elected and serving, ***at a meeting held in compliance with the Open Meetings Act.***

44.    Plaintiff White has and will suffer significant damages including economic damages, emotional and mental distress damages, and reputational damages due to the actions of Defendants.


## COUNT I

## VIOLATION OF FIRST AMENDMENT RIGHTS PURSUANT TO 42 USC §1983

45.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

46.    Plaintiff, as a private citizen and public employee of the County of Kalamazoo was entitled to constitutional protection of free speech.  In notifying the County Prosecutor and State Police of potential wrongdoing of

the County Treasurer, Plaintiff was engaged in protected activity under the constitution of the United States.

47.     The speech was and is a matter of public concern.

48.     Defendants in harassing, abusing, disciplining and terminating the employment of Plaintiff because of her disclosure of actual or potential wrongdoing caused her to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity.

49.     The adverse actions against Plaintiff were motivated by Plaintiff's exercise of her constitutional rights.

50.     The conduct of Defendants described and complained of above constitutes unreasonable and unconstitutional interference with and infringement upon Plaintiff's exercise of her rights of free speech, guaranteed under the First and Fourteenth Amendments to the United States Constitution.

51.     As the direct consequence and result of the acts of Defendants, Plaintiff suffered much anxiety and distress, discomfort, embarrassment and financial loss.

52.     The illegal retaliation toward and discharge of Plaintiff by Defendants was motivated by Plaintiff's exercise of her First Amendment rights to criticize a public official.

53.     Defendants' actions were intended to harass and punish Plaintiff

for exercising her constitutional rights, were an oppressive and unlawful attempt to limit Plaintiff's rights to continued employment, and failed to give Plaintiff due process, violating any property interest she had in her employment, all in violation of the First, Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

54.     As the direct consequence and result of the acts of Defendants, Plaintiff was deprived of her employment, suffered much anxiety, distress, discomfort and embarrassment, and damage to her reputation.

## COUNT II

### WRONGFUL TERMINATION IN VIOLATION OF
### THE WHISTLEBLOWERS' PROTECTION ACT

55.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

56.     Plaintiff White was an employee, and Defendant County of Kalamazoo was her employer, covered by and within the meaning of Michigan's Whistleblowers' Protection Act, Mich. Comp. Laws §15.361 *et seq.*

57.     Plaintiff reported suspected violations of State and Federal laws, regulations, and/or rules governing the use of public funds.

58.     Defendant County of Kalamazoo, by its agent(s), was aware that Plaintiff reported violations or suspected violations to a public body.

59.     Defendants' actions in retaliating against Plaintiff and

terminating her employment were intentional and in disregard for the rights of Plaintiff.

60.     The retaliatory conduct of Defendants violates Michigan's Whistleblowers' Protection Act. Mich. Comp. Laws §15.362.

61.     As a direct and proximate result of the violation of Plaintiff's rights as alleged, Plaintiff has suffered irreparable harm, injuries, and damages, including but not limited to loss of earnings and earning capacity, past and future lost earnings, and the value of fringe benefits. Plaintiff has sustained humiliation, outrage, indignity, mental and emotional distress, embarrassment, anxiety about the future, damage to her good name and reputation, and loss of the ordinary pleasures of everyday life.

## COUNT III

### WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY ("PUBLIC POLICY TORT")

62.     Plaintiff White re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

63.     During the course of her employment with Defendant County of Kalamazoo, Plaintiff refused to acquiesce in activities that she believed to be potential violations of law, and internally objected to those activities.

64. In particular, Plaintiff attempted to comply with State and Federal laws, regulations and rules governing the use of public funds, and asked for guidance from the County Prosecutor regarding the potentially illegal conduct.

65. The discipline and termination of Plaintiff White was motivated by her refusal to violate the law and acquiesce in violations of law and for her internal objections to practices which implicated or could have implicated illegal compliance.

66. Plaintiff's termination violates clearly established public policy of the State of Michigan that an employer may not adversely alter an employee's employment when the reason for the alteration was the failure or refusal to violate a law in the course of employment.

67. As a direct and proximate result of the violation of Plaintiff's rights as alleged, Plaintiff has suffered irreparable harm, injuries, and damages, including but not limited to loss of earnings and earning capacity, past and future lost earnings, and the value of fringe benefits. Plaintiff has sustained humiliation, outrage, indignity, mental and emotional distress, embarrassment, anxiety about the future, damage to her good name and reputation, and loss of the ordinary pleasures of everyday life.

## COUNT IV

### VIOLATIONS OF THE OPEN MEETINGS ACT

68.     Plaintiff incorporates paragraphs 1 through 67 as though set forth herein.

69.     Defendant Kalamazoo County is subject to Michigan Open Meetings Act. MCL 15.261 et al.

70.     The Open Meetings Act requires decisions of a public body or board to be done in open session, and public notice must issue.

71.     A "public body" under the Act includes a board commission, committee, subcommittee, authority, or council (MCL 15.262).

72.     In order for a board or a committee of the board to meet in a closed session, a 2/3 roll vote of the members elected or appointed and serving must vote in an open session to go into closed session, and only for certain purposes as specified in the Act (MCL 15.267).

73.     Minutes of the meeting in which it has been decided by the board or committee or subcommittee of the board to go into closed session must be kept (MCL 15.269).

74.     Under MCL 15.268, a board or committee or subcommittee of the board may go into closed session:

(a) To consider the dismissal, suspension, or disciplining of, or to hear complaints or charges brought against, or to consider a periodic personnel evaluation of, a public officer, employee, staff member, or individual agent, *if the named person requests a closed hearing*. A person requesting a closed hearing may rescind the request at any time, in which case the matter at issue shall be considered after the rescission only in open sessions. (emphasis added)

75.    Defendant County violated the Open Meetings Act in that it failed to give public notice of one or more meetings of the Board;  failed to give notice that the meeting on November 6  would include consideration of the employment of Plaintiff White as one of its topics and the subject was not on the Notice or Agenda; went into closed session or sessions on a decision considering the dismissal of Plaintiff White when she was unaware the subject of her employment was going to be discussed and was not given the opportunity to request closed session; and did not vote to go into closed session pursuant to the requirements of the Open Meetings Act.

76.    Defendant County willfully violated the Open Meetings Act knowing full-well all of the requirements listed above and meeting and deciding on the fate of Corporate Counsel in closed session.

77.    As a result of these violations of the Open Meetings Act, the rights of members of the public were impaired in the following ways:

    i.   The members of the public served by the County and Corporate Counsel were not given a chance to hear the reasons for the consideration of her dismissal;

    ii.   The members of the public served by the County and Corporate Counsel were deprived of offering meaningful comment and input prior to a decision being made regarding her dismissal;

    iii.   The November 6 Open Meeting announcing the termination of Corporate Counsel was simply a rubber stamp to the decision made previously by the Commission and there was no deliberation or time allotted for public comment.

78.    Because the rights of the public were impaired to such a degree, Plaintiff requests that the decision of the County Commission be rescinded, that Ms. White be reinstated as Corporate Counsel, and that she be given all compensation and benefits she should have been receiving prior to the November 6 meeting.

## COUNT V
## BREACH OF CONTRACT

79.    Plaintiff incorporates by reference paragraphs 1 through 78.

80.    Plaintiff White was employed by the County of Kalamazoo pursuant her Employment Agreement.

81.    Defendants' failure and refusal to abide by the terms of this contract of employment by summarily firing Plaintiff without giving Plaintiff White sixty (60) day notice required by the contract, constitutes a breach of

said contract.

82.    Defendants' intentional violation of the Open Meetings Act by not issuing proper notice, nor allowing Plaintiff to request an open or closed meeting, continued to breach the contract.

83.    All conditions precedent to full performance on the part of Plaintiff occurred.  The contract remains breached.

84.    As a direct and proximate result of Defendants' breach of contract, Plaintiff White has sustained significant damages including consequential damages.

<u>RELIEF</u>

WHEREFORE, Plaintiffs request:

(a) Judgment against Defendants in the amount due for lost wages and other economic and non-economic loss;

(b) Plaintiff's employment be reinstated with Defendant Kalamazoo County;

(c) An additional amount of compensation based on the injury to her reputation.

(d) Award to Plaintiff costs and reasonable attorney fees for all causes of action;

(e) Award to Plaintiff exemplary and punitive damages; and

(f) Award to Plaintiff such other legal and equitable relief as the

Court deems appropriate, including interest from the date of the Complaint.

Respectfully Submitted,

PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Plaintiff Elizabeth White

Dated:  November 13, 2019          By /s/ *Katherine Smith Kennedy*
                                   Katherine Smith Kennedy(P-54881)
                                   Business Address and Telephone:
                                   146 Monroe Center, NW, Suite 805
                                   Grand Rapids, MI 49503
                                   (616) 451-8496

## JURY DEMAND

Plaintiff demands a trial by jury of all issues.

Respectfully Submitted,

PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Plaintiff Elizabeth White

Dated:  November 13, 2019          By /s/ *Katherine Smith Kennedy*
                                   Katherine Smith Kennedy, Esq.
                                   Business Address and Telephone:
                                   146 Monroe Center Street NW, Suite 805
                                   Grand Rapids, MI  49503
                                   (616) 451-8496